**11-CV-01245-CMP**

FILED       ENTERED
LODGED      RECEIVED

JUL 27 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

C11-1245

1

2  Bryan D. Mize
   20908 48th Ave W
3  Lynnwood, WA  98036
   Phone (206) 349-0733

4              UNITED STATES DISTRICT COURT

5        WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| 6  Bryan D. Mize | **Complaint For:** |
| 7                              **Plaintiff,** | (1) *Violations of the Washington Deed of Trust Act, RCW 61.24 et seq* |
| 8              **vs.** | (2) **Violations of RESPA 12 U.S.C. §2605 et seq** & §2607 *et seq.* |
| JPMorgan Chase Bank N.A.; | (3) **Violations of Truth in Lending Act 15 U.S.C. §1641 et seq.** |
| 9  Northwest Trustee Services; | (4) **Violations of FDCPA 15 U.S.C. §1692 et seq.** |
| 10                         **Defendants,** | (5) **Violations of FCRA 15 U.S.C. §1681** |
| 11 | (6) **Violations of the Washington Consumer Protection Act RCW 19.86 et seq.** |
| 12 | (7) **Declaratory Relief; Lack of Standing** |
| 13 | (8)  **Temporary Restraining Order/Preliminary Injunction** |

14      **Bryan D. Mize,** Plaintiff, states claims against the following named Defendants: JPMorgan Chase

15  Bank N.A., and Northwest Trustee Services; separately and together as follows:

16                  I.      **Jurisdiction, Venue and Parties**

17  **1.1     Jurisdiction and Venue**

18  Jurisdiction in this case is based on 28 USC §1331 because Plaintiff's claims stated below against

    Defendants include allegations of violations of federal statutes. In addition, this case is based on diversity
19
    of citizenship pursuant to 28 USC §1332. The Plaintiff is a resident of Washington State, and some of the
20
    parties are residents of other states, as stated in the descriptions of the parties in **Paragraphs 1.2 through**
21
    **1.6** of this Complaint.  The value of the amount in controversy exceeds $75,000.00, as described in the
22
    promissory note and deed of trust which are described in Paragraph 1.2 of this Complaint, Venue in this
23
    matter is properly set in the U.S. District Court, Western District of Washington pursuant to 28 USC
24
    §1391(a)(2) based on facts pled in **Paragraphs 1.2 and 1.6, below.**
25

26  **1.2     Bryan D. Mize, Plaintiff**

27          Bryan D. Mize, Plaintiff, is a resident of the state of Washington and owner of the real property

    described below.  Plaintiff acquired his interest in property pursuant to the Statutory warranty Deed
28
    dated August 29, 2001, recorded in the Snohomish County Records Record #20109110176, a copy of

which is attached, marked **Exhibit P**, and incorporated herein by reference as if fully set forth here..  At the time of the refinance Plaintiff signed a  Deed of Trust dated January 5, 2007 recorded in the Snohomish County Auditor Records January 16, 2007 Recording No. 200701160657, a copy of which is attached, marked **Exhibit A**, and incorporated herein by reference as if fully set forth here..  That deed of trust stated that it secured payment of a promissory note also dated January 5, 2007 in the original principal amount of $320,000.00, a copy of which is attached, marked **Exhibit B**, and incorporated herein by reference as if fully set forth here.  That loan and debt is one of the subjects of this lawsuit.  The Loan Number on the Deed of Trust is 3011430703-048. The Legal Description of the Property is

> LOT 1, CITY OF LYNNWOOD SHORT PLAT RECORDED UNDER AUDITOR'S FILE
> NUMBER 200505065042, BEING A PORTION OF THE SOUTHEAST QUARTER OF
> SECTION 21, TOWNSHIP 27 NORTH, RANGE 4 EAST, W M
> Tax Parcel Number: 27042100408100
> Site Address: 20908 48th Avenue W, Lynnwood  WA 98036

**1.3     JPMorgan Chase Bank NA, Defendant**

JPMorgan Chase Bank NA (hereafter "Chase") is a National Association doing business in Snohomish County, Washington with a home office in New York, New York. Chase claims to be the successor in interest to Washington Mutual Bank, FA[1]. Defendant Chase is subject to the jurisdiction and venue of this Court by a combination of four reasons: (1) by its residency in New York, (2) by its claims of being the holder of the $320,000.00 promissory note signed by the Plaintiff, (3) by its requesting defendant Northwest Trustee Services perform a non-judicial foreclosure sale with respect to the certain deed of trust and (4) by Plaintiff's claims against Chase in this Complaint.

**1.4     Northwest Trustee Services, Defendant**

Northwest Trustee Services (hereafter "NWTS") is a Washington corporation with a home office in Bellevue, WA and doing business in Snohomish County. NWTS claims to be the successor trustee of the certain deed of trust and also the agent of defendant Chase. NWTS recorded or caused to be recorded

---

[1] JP Morgan Chase Bank N.A. acquired certain servicing rights and certain liabilities pursuant to the Purchase & Assumption Agreement dated Sept. 25th, 2008, between the FDIC and JP Morgan Chase, a copy of which is attached, marked **Exhibit Q**, and incorporated herein by reference as if fully set forth here.

several documents including most recently a Notice of Trustee Sale under Snohomish County Auditor No. 20100304000502, a copy of which is attached, marked **Exhibit C**, and incorporated herein by reference as if fully set forth here, with a sale date set for Friday, August 5th, 2011 at 10:00 am on the steps in front of the north entrance to the Snohomish County Courthouse, 3000 Rockefeller Ave in the City of Everett, WA. NWTS is subject to the jurisdiction and venue of this court by scheduling the non-judicial sale at the location described in this paragraph and its other activities as alleged in this complaint.

## II.   Background Facts and History

**2.1   Original Loan to Plaintiff;  Lender Named as Payee on Promissory Note (Exhibit B)**

The original lender on Loan No. 3011430703-048. Plaintiff applied for and obtained a home loan for $320,000 from WAMU.  As a part of the closing of the loan, the Plaintiff was required by WAMU to sign a promissory note, hereafter referred to as Note, stating a principal debt of $320,000.00. The only name listed in the signature field of the Note is Plaintiff's name "Bryan D. Mize". The note was expressly payable to Washington Mutual Bank FA or its order.  A signed copy of the Note is attached hereto, marked **Exhibit B** and incorporated herein by reference as if fully set forth here.  At the upper right hand corner of the first page of the Note is a Loan No. 3011430703-048.  The note had an adjustable interest rate fixed for the first five years at 6 %. This loan is one of the subjects of this lawsuit.

**2.2   Related Deed of Trust (Exhibit A)**

The payment of the Note was secured by a deed of trust encumbering the Plaintiff's real property described in 1.2 of this Complaint.  The payment of the Note was secured by a first priority deed of trust dated January 5th, 2007, and recorded in the Snohomish County Records January 16th, 2007 under Recording No. 200701160657.  This Deed of Trust is one of the subjects of this lawsuit, and encumbers the title to Plaintiff's real property described in 1.2 above.  A copy of the recorded Deed of Trust is attached hereto, marked **Exhibit A**, and incorporated herein by reference as if fully set forth here. A number listed on the first page of that exhibit is 3011430703-048 which corresponds to the Loan Number on the Note. The Deed of Trust provided that the Lender was Washington Mutual Bank FA; the Borrower was Bryan D. Mize A Single Person; the designated trustee was Chicago Title Insurance Co.; and the "Lender" is listed as the designated beneficiary.   The Deed of Trust document is 15 pages.

### 2.3   Notice of Default (Exhibit D)

The Notice of Default was dated March 16, 2010, a copy of which is attached, marked **Exhibit D**, and incorporated herein by reference as if fully set forth here. The document was prepared and served or caused to be served by NWTS. Section K of the Notice of Default states, "Contact Information for the Beneficiary (Note Owner)" and names as beneficiary:

**JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") successor to Washington Mutual Home Loans, Inc. fka PNC Mortgage Corporation of America from the Federal Deposit insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. 1821(d).**

While this is a very official sounding title, it is a false and misleading statement since Washington Mutual Bank had ceased to exist in 2005[2], and the accompanying beneficiary declaration, a copy of which is attached, marked **Exhibit O**, and incorporated herein by reference as if fully set forth here, which was executed by Chase does not list a beneficiary at all.  The Beneficiary line is blank but it does list JP Morgan Chase Bank as the Loan Servicer.   RCW 61.24.030(8)(l) requires that the current note owner's name and contact information be provided on the Notice of Default.  It would appear from these documents that Chase is the servicer only and the Beneficiary is currently an unknown party.

Therefore Chase and NWTS are in violation of the prerequisites of a non-judicial trustee sale as provided in RCW 61.24.030(8):

"That at least 30 days before notice of sale shall be recorded, transmitted or served, written notice of default shall be transmitted by the beneficiary or trustee…"

Chase's own declaration does not list them as the beneficiary (note owner), as NWTS claimed in the Notice of Default.

Further at the time that the Notice of Default was posted NWTS was not appointed as the successor trustee, the trustee was still Chicago Title Insurance Co.  The Appointment of Successor

---

[2] Washington Mutual's 2005 10-K filing clearly states on page six : "On January 1, 2005, our state savings bank, Washington Mutual Bank ("WMB") merged into Washington Mutual Bank, FA ("WMBFA"), and ceased to exist;"  A full 194 page copy can be found online, but a copy of the first six pages is attached, marked **Exhibit R**, and incorporated herein by reference as if fully set forth here.

Trustee, a copy of which is attached, marked **Exhibit E**, and incorporated herein by reference as if fully set forth here, was not executed and recorded until the next month.

### 2.4.1   Beneficiary Declaration Pursuant to Chapter 61.24 RCW (SB 5810)

The Beneficiary Declaration (required by RCW 61.24.031 (2)), a copy of which is attached, marked **Exhibit O**, and incorporated herein by reference as if fully set forth here, was executed on March 4, 2010 by a computer generated signature under the penalty of perjury by Clement J. Durkin. Mr. Durkin "executed" this document as the "Beneficiary's Authorized Agent" even though no beneficiary was listed thereby calling into question the veracity of this claim. Plaintiff alleges this unclaimed Beneficiary Declaration is a violation of RCW 61.24.031(2) and a misrepresentation of the facts. In addition, the entire Notice of Default was served by NWTS on March 16 2010, three weeks before NWTS was even appointed as a successor trustee on April 7 2010.

**2.4**    **Routh Crabtree Olsen PLLC Letter to Plaintiff March 16, 2010 (Exhibit F)**

On March 16, 2010, Routh Crabtree Olsen PS executed a letter to Plaintiff, a copy of which is attached, marked **Exhibit F**, and incorporated herein by reference as if fully set forth here. On the first page, second paragraph they stated, "Please be advised that Routh Crabtree Olsen PS is working with JPMorgan Chase Bank NA to help you keep your home. We represent your mortgage company...". Plaintiff disputes that Chase was then or has ever been his "mortgage company".. This letter does not comply with the contact required by RCW 61.24.031 (1)(a):

"A trustee, beneficiary, or authorized agent may not issue a notice of default under RCW 61.24.030(8) until thirty days after initial contact with the borrower is made as required under (b) of this subsection"

which subsection (b) states:

"A beneficiary or authorized agent shall contact the borrower by letter and by telephone in order to assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure. The letter required under this subsection must be mailed in accordance with subsection (5)(a) of this section and must include the information described in subsection (5)(a) and (e)(i) through (iv) of this section."

The Notice of Default was served on the same day as the execution of this letter, March 16, 2010, therefore it appears to Plaintiff that Chase is in violation of RCW 61.24.031(1)(b).  The statute is quite clear in that it requires the contact precede the Notice of Default by a <u>minimum</u> of 30 days.  It is also important

to note that this documentation provided by Routh Crabtree Olsen PS references a Freddie Mac Loan Number 417138164.

## 2.5    Appointment of Successor Trustee (Exhibit E)

An Appointment of Successor Trustee was signed by known robo-signer Margaret Dalton on April 2nd, 2010 and recorded on April 7, 2010. This Appointment purported to transfer Trustee duties from Chicago Title Insurance Co to defendant NWTS. The multitude of titles that Margaret Dalton has signed legal documents under are too numerous to list here, I have included a list that was accurate as of last September, a copy of which is attached, marked **Exhibit G**, and incorporated herein by reference as if fully set forth here.

The third paragraph of the Appointment clearly states, "The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the **holder** of the obligation (Plaintiff's note: Note) secured by the subject deed of trust…". It is Plaintiff's contention that Chase is neither the present beneficiary nor the owner of the subject note.

According to RCW 61.24.030(7)(a) Plaintiff alleges Chase had no right to appoint a successor trustee. The statute states:

"…the trustee shall have proof that the beneficiary is the **owner** of any promissory note or other obligation secured by the deed of trust."

Chase's claims to be the owner appear to be false as a quick search of Freddie Mac's website states that it also claims to be the owner, however according to Freddie Mac's publicly stated business model they would have resold the note into a securitization as their standard business practice, thereby also not being the current owner of the note. It appears to Plaintiff that at no time has Chase been the owner or beneficiary of the Note as its predecessor WAMU sold the note prior to the FDIC receivership. In addition, as described above it appears that there are multiple parties who may attempt to claim an interest in Plaintiff's Note and/or Deed of Trust. Until any Defendants attempting to make a claim prove that such a claim by any other parties does not exist, no Defendant can claim the right to foreclose in reliance on the Deed of Trust. See RCW 62A 3-309(b):

"…The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument…"

**2.6      First Notice of Trustee Sale (Exhibit H)**

Plaintiff received a Copy of the Notice of Trustee Sale, a copy of which is attached, marked **Exhibit H**, and incorporated herein by reference as if fully set forth here, from Defendant NWTS on or about April 16, 2010 stating the property described above was to be sold at Trustee's Auction on July 16, 2010. The Notice of Trustee Sale was recorded under Snohomish County records under recording number 201004160373 on April 16, 2010.

**2.6.1      Parties**

**2.6.1.1** Grantors: NWTS and **JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") successor to Washington Mutual Home Loans, Inc. fka PNC Mortgage Corporation of America from the Federal Deposit insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. 1821(d).** There is no evidence supporting the claims that Chase has any beneficial interest in either the Note or the Deed of Trust.  Therefore any appointment Chase has made would be ultra vires and therefore is void and of no effect.  Therefore, NWTS's actions are void and of no effect.

**2.6.1.2** Grantee: Bryan D. Mize, as his separate estate

**2.6.2      Fees and Amount to Reinstate in Section II**

**2.6.2.1** The Notice of Trustee Sale lists a total of $799.10 in late fees, there is no explanation of how this is calculated. Lender's Fees and Costs are listed at $217.65, there is also no explanation for this amount and Plaintiff disputes the calculations used to arrive at this amount. here is a Trustee's Fee of $725.00 but no explanation of what this fee entails. As NWTS has never been appointed by the owner of the Note, Plaintiff disputes this charge. Title Report charges of $1113.62.  Plaintiff disputes this amount.  Statutory Mailings fee of $39.12. Plaintiff disputes this amount until it is verified. Recording Costs are  $14.00. Plaintiff disputes this amount until it is verified. Postings fee

is listed at $70. Plaintiff has no knowledge of what Defendant NWTS is claiming as a "posting fee" and it appears to be erroneous.

2.6.2.2 As shown above, there are many unexplained fees listed within the costs section. Plaintiff believes that Defendants NWTS and Chase added costs in an effort to increase their profits from these activities. This is a deceptive and unethical business practice.

2.6.2.3 The Notice of Trustee Sale was signed by **Vonnie McElligott** and notarized by Rhea S. Pre.

2.6.3   The last line on the Notice of Trustee Sale states, "This is an attempt to collect a debt…" which makes NWTS appear to Plaintiff to be a debt collector regulated under the Fair Debt Collection Practices Act 15 U.S.C. §1692a(5).

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, **directly or indirectly**, debts owed or due or asserted to be owed or due another. . . .For the purpose of section 808(6) [15USC § 1692f(6)], such term **also includes** any person who uses any instrumentality of interstate commerce or the mails in **any business the principal purpose of which is the enforcement of security interests.**"

## 2.7   Amended Notice of Trustee Sale (Exhibit I)

Plaintiff had filed for Chapter 7 Bankruptcy protection in June of 2010.  Defendant Chase, represented by Routh Crabtree petitioned for relief, a copy of which is attached, marked **Exhibit J**, and incorporated herein by reference as if fully set forth here, from automatic stay of the foreclosure proceedings and were successful.  As such Plaintiff received a Copy of the Amended Notice of Trustee Sale, a copy of which is attached, marked **Exhibit I**, and incorporated herein by reference as if fully set forth here, from Defendant NWTS on or about October 28, 2010 stating the property described above was to be sold at Trustee's Auction on November 29, 2010. The Notice of Trustee Sale was recorded under Snohomish County records under recording number 201010280205 on October 28, 2010.

### 2.7.1   Parties

2.7.1.1 Grantors: NWTS and **JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") successor to Washington Mutual Home Loans, Inc. fka PNC Mortgage Corporation of America from the Federal Deposit insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. 1821(d).** There is no evidence supporting the claims that Chase has any

beneficial interest in either the Note or the Deed of Trust.  Therefore any appointment Chase has made would be ultra vires and it is void and of no effect.  Therefore, NWTS's actions are void and of no effect.

**2.7.1.2** Grantee: Bryan D. Mize, as his separate estate

**2.7.2    Fees and Amount to Reinstate in Section II**

**2.7.2.1** The Notice of Trustee Sale lists a total of $1278.56 in late fees, there is no explanation of how this is calculated. Lender's Fees and Costs are listed at $2697.49, there is also no explanation for this amount and Plaintiff disputes the methos used to arrive at these numbers.  There is a Trustee's Fee of $508.00 but no explanation of what this fee entails. As NWTS has never been appointed by the owner of the Note, Plaintiff disputes this charge. Title Report charges of $0.00.  Statutory Mailings fee of $168.00. Plaintiff disputes this amount until it is verified. Recording Costs are $129.00. Plaintiff disputes this amount until it is verified. Postings fee is listed at $70. Plaintiff has no knowledge of what Defendant NWTS is claiming as a "posting fee" and it appears to be erroneous. Sales Cost is listed as $500.00.  Plaintiff wonders what sale defendant is charging for here.

**2.7.2.2** As shown above, there are many unexplained fees listed within the costs section. Plaintiff believes that Defendants NWTS and Chase added costs in an effort to increase their unjust enrichment. Plaintiff believes this is a deceptive and unethical business practice.

**2.7.2.3** The Notice of Trustee Sale was signed by **Vonnie McElligott** and notarized by Heather E. Casey on October 27, 2010.  More than a week after it was "Effective".

**2.7.3**     The last line on the Notice of Trustee Sale states, "This is an attempt to collect a debt…" which makes NWTS appear to Plaintiff to be a debt collector regulated under the Fair Debt Collection Practices Act 15 U.S.C. §1692a(5)..

**2.8     Most Recent Notice of Trustee Sale (Exhibit  C )**

**2.8.1**     Plaintiff received a Copy of the Notice of Trustee Sale from Defendant NWTS on or about May 4, 2011 stating the property described above is to be sold at Trustee's Auction on August 5, 2011. The Notice of Trustee Sale was recorded under Snohomish County records under recording number 201105040102 on May 4, 2011.

**2.8.1.1** Grantors: NWTS and Chase Bank.  There is no evidence supporting the claims that Chase has any beneficial interest in either the Note or the Deed of Trust.  Therefore any appointment Chase has made would be ultra vires and it is  void and of no effect.  Therefore, NWTS's actions are void and of no effect.

**2.8.1.2** Grantee: Bryan D. Mize, as his separate estate

**2.8.2     Fees and Amount to Reinstate in Section III**

**2.8.2.1** The Notice of Trustee Sale lists a total of $1758.02 in late fees, there is no explanation of how this is calculated. Lender's Fees and Costs are listed at $3400.53, there is also no explanation for this amount and Plaintiff disputes this amount. There is a Trustee's Fee of $508.00 but no explanation of what this fee entails. As NWTS has never been appointed by the owner of the Note. Plaintiff disputes this charge. Title report fees are listed as $0.00.  Statutory Mailings fee of $189.00. Plaintiff disputes this amount until it is verified. Recording Costs are set at $129.00. Plaintiff disputes this amount until it is verified. Postings fee is listed at $75. Plaintiff has no knowledge of what Defendant NWTS is claiming as a "posting fee" and it appears to be erroneous.

**2.8.2.2** As shown above, there are many unexplained fees listed within the costs section. The "lender fees" alone seem excessively high. Plaintiff believes this is a deceptive and unethical business practice.

**2.8.3**     The Notice of Trustee Sale was signed by **Vonnie McElligott** and notarized by Heather E. Casey.

**2.9**     The last line on the Notice of Trustee Sale states, "This is an attempt to collect a debt…" which makes NWTS appear to Plaintiff to be a debt collector regulated under the Fair Debt Collection Practices Act 15 U.S.C. §1692a(5).

**2.10**     **Comparison of Notice of Trustee Sale fees and miscellaneous charges**

| Fee | First Notice | Amended Notice | Most Recent Notice |
| --- | --- | --- | --- |
| Late Charges | $799.10 or $88.79 /Mo | $1,268.56 or $79.91 /Mo | $1,758.02 or $83.71 /Mo |
| Lenders Fees & Costs | $217.65 | $2,697.49 | $3400.53 |
| Trustee's Fee | $725 | $508 | $508 |
| Title Report | $1113.62 | $0 | $0 |
| Statutory Mailings | $39.12 | $168 | $189 |

Bryan D. Mize
20908 48th Avenue W, Lynnwood, WA  98036
Phone: (206) 349-0733

| | | | |
|---|---|---|---|
| Recording Costs | $14 | $129 | $129 |
| Postings | $70 | $70 | $75 |
| Sale Costs | $0 | $500 | $0 |

The table listed above is a clear example of Defendant NWTS's unethical and deceptive business practices as per RCW 19.86. et seq.  At the very least their methods appear to be random, arbitrary and capricious.

**2.11    Qualified Written Request and Debt Validation Demand (Exhibit K)**

Due to the tremendous amount of attention to foreclosure fraud the media began to give in early 2010, Plaintiff began researching foreclosure fraud and making inquiries to determine whether he had become the victim of foreclosure fraud. Plaintiff made multiple attempts to obtain a validation of the accounting and proof of the identity of Owner/Holder, "person entitled to enforce" the Note from WAMU and by extension Chase, as WAMU forwarded the request to Chase. One of these attempts was the Qualified Written Request (QWR), Dispute of Debt (Dispute) and Debt Validation Demand (DVD), a copy of which is attached, marked **Exhibit K**, and incorporated herein by reference as if fully set forth here, that Plaintiff served upon the defendants on or about March 5th, 2010 via prepaid, certified return receipt requested mail. Plaintiff has signed receipts of the mailings. Plaintiff also recorded a copy of the QWR, Dispute and DVD in Snohomish County Recorder's office (#201003050324) to provide public notice to any unknown parties. WAMU chose not to assist Plaintiff in his request. Defendant Chase responded to Plaintiff as detailed below in Section 2.12 of this Complaint.

**2.12    Letter to Plaintiff from Chase dated June 2, 2010 (Exhibit L)**

In response to Plaintiff's QWR, Dispute and DVD Defendant Chase sent Plaintiff a letter on June 2, 2010, a copy of which is attached (with enclosures), marked **Exhibit L**, and incorporated herein by reference as if fully set forth here. Within that letter they never addressed Freddie Mac's purchase of the loan, even though specific questions were asked directly about the loan's ownership history. Plaintiff has recently performed research that shows that Freddie Mac claims to be the owner of the Note but as Section 2.13 below will show it is Freddie Mac's business model to sell their beneficial interest in the Notes they purchase to an as of yet unidentified party(ies). As part of the response Chase also provided Plaintiff a copy of the note, deed of trust, appraisal as well as a payment history showing payments Plaintiff had

Bryan D. Mize
20908 48th Avenue W, Lynnwood, WA  98036
Phone: (206) 349-0733

previously made. Nothing that Chase provided in their response to Plaintiff's demand showed that Chase is the person entitled to enforce the note and/or the Deed of Trust.  Chase did not provide any chain of title of the Note or Deed of Trust, nor any accounting records, purchase agreements and other information Plaintiff had requested in order to validate the debt.[3]

Furthermore, per USC 15 1692 §809(b) all collection activities must cease until the debt has been validated. The process of foreclosure can clearly be construed as collection activity, especially considering that RCW 61.24 does not allow for deficiency judgments in addition to a foreclosure[4].  The Defendants have failed to comply with this statute and the rulings of the above referenced courts by continuing to attempt to collect a debt that is in dispute.

**2.13    Freddie Mac "Our Business – Single Family Credit Guarantee Business" (Exhibit  M )**

Plaintiff's research shows that Freddie Mac's claims to own Plaintiff's loan must be false.  Freddie Mac cannot be the owner.  Freddie Mac's website, a copy of which is attached, marked **Exhibit M**, and incorporated herein by reference as if fully set forth here, states, "Securitization is a process by which we purchase home loans that lenders originate, **put these loans into mortgage securities that are sold in global capital markets**, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend". This appears to be their standard business practice in which they purchase a loan from a lender and quickly sell those purchased promissory notes to investors around the world. Freddie Mac simply does not retain promissory notes. Its revenue stream primarily results from the quick turnaround of reselling those notes into mortgage backed securities.

---

[3] It has been found by many courts that to comply with the statute and protect the consumer's rights validation requires presentment of the account and general ledger statement signed and dated by the party responsible for maintaining the account. *Pacific Concrete F.C.U, v, Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980); GE Cap/fal Hawaii, Inc. v. Yonenaka, 25 P.3d 807, 96 Hawaii 32 (Hawaii App 2001); *Fooks v. Norwich Housing Authority,* 28 Conn. L. Rptr. 371, (Conn. Super.2000); *Town of Brookfield v. Candlewood Shores Estates, Inc.,* 513 A.2d 1218, 201 Conn. 1 (1986); and *Solaon v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 515 N.E. 2d 1045 (3rd Dist 1987).

[4] The Fourth Circuit has concluded that a "'debt' remain[s] a 'debt' even after foreclosure proceedings commenced" and that actions "surrounding foreclosure proceeding were attempts to collect that debt." Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (citing Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt)). The Fourth Circuit reasoned that to conclude otherwise "would create an enormous loophole in the Act."

In the 3rd paragraph under the Single Family Credit Guarantee section the website further states:

> "When a family stops making payments – often due to loss of income – **Freddie Mac steps in and makes those payments to securities investors.** Managing this risk, known as credit risk, is how we generate revenue. **Each time we fund a loan, we collect a credit guarantee fee from the lender selling us the loan. This fee is intended to protect us in case of loan default.**"

Therefore even if a currently known or as yet unidentified party is shown to have a beneficial interest in the Deed of Trust, adequate to invoke the power of sale which was granted to the original trustee, that power of sale could not be invoked because there was never a default to the real party of interest, who would also have to be the "person entitled to enforce" the note.[5]

### III.   Plaintiff's Claims

**3.1   Violations of the Washington Deed of Trust Act, RCW 61.24 et seg.**

**3.1.1**   Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.1.2**   It appears to Plaintiff that Defendant Chase cannot be considered the person entitled to enforce the Note as it never took the note "for value" RCW 62A.3-302(2)(ii).

**3.1.3**   It appears to Plaintiff that Defendant Chase violated the Doctrine of Ultra Vires by appointing Defendant NWTS Successor Trustee without proper authority

**3.1.4**   It appears to Plaintiff that Defendant NWTS has violated on several occasions their duty of good faith to Plaintiff as required by RCW 61.24.010(4):

> "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."

NWTS was, or should have been, well aware of the false statements that Chase is the owner of the note, having prepared the Notice of Default (with no beneficiary listed in the declaration attached to the notice), it appears that neither Chase nor NWTS completed even a bare de minimus of due diligence to determine who the true party with a beneficial interest adequate to enforce the Note actually is.   This is especially disconcerting as it iss in direct violation of the Attorney General's recent reminders to adhere strictly to the law.

---

[5] See

Plaintiff's Initial Complaint                    -13-                    Bryan D. Mize
                                                            20908 48th Avenue W, Lynnwood, WA  98036
                                                            Phone: (206) 349-0733

Plaintiff alleges that Defendant NWTS failed to reveal the misrepresentations in order to solicit future business from Defendant Chase for both themselves and their Affiliated Entity Routh Crabtree Olsen PS.

**3.1.5** Plaintiff alleges Defendant NWTS further violated their duty of good faith by failing to disclose that it has an affiliated entity relationship with Routh Crabtree Olsen who was Defendant Chase's collection agency as stated clearly in Exhibit F as well as Defendant Chase's legal representative as stated in Exhibit J.

**3.1.6** Plaintiff claims that Defendant NWTS violated RCW 61.24.030(7)(a)&(b) by knowingly filing and recording a Notice of Trustee sale (Exhibit H) on or about March 16, 2010 when they knew, or should have known, that Chase was not the owner of the Note in question.

**3.1.7** Plaintiff claims that Defendant NWTS violated RCW 61.24.030(7)(a)&(b) again by knowingly filing and recording an Amended Notice of Trustee sale (Exhibit I) on or about October 28, 2010 when they knew (or should have known) that Chase was not the owner of the Note in question.

**3.1.8** Plaintiff claims that Defendant NWTS violated RCW 61.24.030(7)(a) a second and third time by filing and recording the Amended Notice of Trustee Sale and the most recent Notice of Trustee Sale for the same reasons as listed in 3.1.5 above. Further these actions both occurred after they had received a letter from the Attorney General of Washington, Rob McKenna, a copy of which is attached, marked **Exhibit N**, and incorporated herein by reference as if fully set forth here, strongly reminding these foreclosure mills of their legal responsibilities to conduct their affairs within the strictest measures of the law.. At this time NWTS was well aware, or should have been, of the questionable nature of Chase's claims regarding their interest in the note and deed of trust, yet is still moving forward with conducting a non-judicial foreclosure sale.

**3.1.9** Plaintiff claims Defendant Chase was in violation of RCW 61.24.030 by claiming to be the "(Note Owner)" in the Notice of Default (Exhibit D) when they knew they were not the person entitled to enforce the promissory note.

**3.1.10**      Plaintiff alleges Defendant Chase violated RCW 61.24.031 by filling out the Beneficiary's Declaration that accompanied the Notice of Default (Exhibit O ) when they knew they were not the Note owner, as a matter of fact they don't know who the beneficiary is or they would've filled in that line, so how could they claim to be the agent of the beneficiary?

**3.1.11**      Plaintiff alleges both Defendants Chase and NWTS are in violation of RCW 61.24.030(8)(l) by failing to put on the Notice of Default the actual owner of the promissory note thereby preventing Plaintiff from investigating the alleged default and having the opportunity to attempt to privately resolve this matter with the appropriate party.

**3.1.12      PLAINTIFF CLAIMS DAMAGES** against Defendants Chase and NWTS for the various violations of the Washington Deed of Trust Act as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of RCW 61.24 *et seq.*

**3.2**     **Violations of RESPA 12 U.S.C. §2605 *et seq* & §2607 *et seq*.**

**3.2.1**      Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.2.2**      Plaintiff alleges that Defendant Chase violated U.S.C 12 §2605(e)(2)(C)(1) by refusing to provide the requested information regarding the Plaintiff's loan or providing a reason for the inability the information was unavailable other than it was "proprietary" in their letter to Plaintiff on June 2, 2010 (Exhibit  L).

**3.2.3**      Plaintiff alleges Defendant Chase violated U.S.C 12 §2605(e)(3) by continuing to report derogatory information to the credit bureaus Experian, Equifax and TransUnion during the 60 days they had to review Plaintiff's Qualified Written Request as required by that statute.

**3.2.4**      Plaintiff claims Defendant NWTS violated U.S.C. 12 §2607(c)(4) by failing to provide written disclosure to Plaintiff of their Affiliated Business Entity Relationship with Routh Crabtree Olsen PS.  It appears that It is likely that the fees are being shared or split between these affiliated companies.

**3.2.5      PLAINTIFF CLAIMS DAMAGES** against Defendants Chase and NWTS for the various violations of RESPA as set forth above. The amount of damages of an amount to be

decided at trial or in a dispositive motion and any attorney fees and or related costs incurred

to Plaintiff for bringing these claims of violations of RESPA.

**3.3    Violations of Truth In Lending Act 15 U.S.C. §1641 *et seq.***

    **3.3.1**    Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation

above as if fully and completely set forth herein.

    **3.3.2**    It appears to client that Defendant Chase violated 15 U.S.C §1641(f)(2) by failing

to provide the name, address and telephone number of the owner of the promissory note or

the master servicer of the same when Plaintiff requested it in the Qualified Written Request

and Debt Validation Demand and Dispute (Exhibit L).

> "Upon written request by the obligor, the servicer shall provide the
> obligor, to the best knowledge of the servicer, with the name, address,
> and telephone number of the owner of the obligation or the master
> servicer of the obligation."

    **3.3.3**    **PLAINTIFF CLAIMS DAMAGES** against Defendants Chase for the violation of

TILA as set forth above. The amount of damages of an amount to be decided at trial or in a

dispositive motion and any attorney fees or related costs incurred to Plaintiff for bringing

these claims of violations of TILA.

**3.4    Violations of FDCPA 15 U.S.C. §1692 *et seq.***

    **3.4.1**    Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation

above as if fully and completely set forth herein.

    **3.4.2**    Defendant Chase is a debt collector. Chase states as much in the voicemails it

leaves, the mailings it sends and the notices it causes to be posted upon Plaintiff's door on a

regular basis for over a year. Defendant Chase violated and continues to violate FDCPA 15

U.S.C. §1692 when it continued and continues to perform debt collection activities after it

received a very clear dispute and validation attempt by Plaintiff as described in Section 2.10 in

this Complaint.

    **3.4.3**    Defendant Chase violated the FDCPA when it caused Routh Crabtree Olsen, who

is also a debt collector, to make collection attempts to the Plaintiff on behalf of Chase as the

mortgage lender (Exhibit  F) when Chase has never been the owner of the promissory note.

**3.4.4**    **PLAINTIFF CLAIMS DAMAGES** against Defendants Chase and NWTS for the various violations of FDCPA as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of FDCPA.

**3.5**    **Violations of FCRA 15 U.S.C. §1681**

**3.5.1**    Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.5.2**    Defendant Chase furnished information to one or more of the credit reporting agencies: Experian, Equifax and Transunion that was inaccurate or incomplete. Plaintiff notified Defendant Chase of the dispute. After receiving multiple notices of the dispute Defendant Chase failed to correct its information or mark the account in dispute with the three credit reporting entities. Instead they reported the account was in foreclosure even though Chase knew that the foreclosure itself was in dispute. Such actions by Defendant Chase violated and continue to daily violate 15 U.S.C. §1681s-2(b). Such actions by Chase are also a "willful noncompliance" in violation of 15 U.S.C. §1681n.

**3.5.3**    **PLAINTIFF CLAIMS DAMAGES** against Chase for the various violations of FCRA as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of FCRA.

**3.6**    **Violations of the Washington Consumer Protection Act RCW 19.86 *et seq.***

**3.6.1**    Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.6.2**    **Elements of a Washington Consumer Protection Act Violation Claim**

**3.6.2.1** Plaintiff understands that a cause of action involving the WA CPA is not to be lightly made. He therefore began researching the necessary requirements for making such a claim. To state a claim under the CPA, plaintiff must plead facts demonstrating: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the

plaintiff in his or her business or property, and (5) which injury *is ca*usally linked to the unfair or deceptive act. Indus. Indem. Co. v. Kallevig, 114 Wn. 2d 907, 920-21 (1990). Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790 (1986). However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. Id. The Court must examine several factors to determine whether the public interest is impacted: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790-91.

3.6.2.2  In order to be as brief as possible, Plaintiff will answer the final four questions in regards to Defendants Chase and NWTS together. These alleged acts ARE committed in the course of the defendant's business as NWTS is a foreclosure mill and Chase continuously requests foreclosures as a part of its business. NWTS does advertise their trustee sales to the general public, including Plaintiff's real property, without ever warning the public that there has been a dispute involved since shortly before the Notice of Default was served. Chase directs NWTS to initiate the advertising of the trustee sales as well as their own REO program without making reference to the possible litigation potential buyers could become involved with as more and more fraudulent documents come to light. The third question of the final four is did the Defendants actively solicit the Plaintiff. The relationship involved does not constitute soliciting the Plaintiff but the greater risk to the public through solicitation for the illegal foreclosure sale of Plaintiff's residence. Finally the Plaintiff and Defendant have very unequal bargaining ground due to the nature of the WA Deed of Trust Act as there is no judicial oversight, no checks or balances of any type that would cause any of the Defendants or any other party for that matter to stop their attempts to wrongfully and illegally deprive Plaintiff of his REAL PROPERTY RIGHTS. Plaintiff's only recourse is to bring this lawsuit in

which the Defendants are uniquely positioned to have the advantage inasmuch as NWTS's affiliated business is a Law Firm that specializes in this area of Law.

### 3.6.3 Plaintiff alleges that Defendant NWTS has Violated the WA CPA

3.6.3.1 Element 1: An Unfair or deceptive act: According to Hangman Ridge, 105 Wn.2d at 785-86; Sanders v. Lloyd's of London, 113 Wn.2d 330, 344 (1989). Defendant NWTS committed violations of the WA CPA when it began operating as a trustee prior to being appointed a successor trustee by serving Plaintiff with a Notice of default. And when it failed to exercise even a good faith effort to verify Chase's assertion that it is the owner of the note after Chase supplied a declaration clearly NOT claiming to be the beneficiary.

3.6.3.2 Element 2: In Trade or Commerce: Plaintiff's loan transaction, like that of any homeowner that NWTS conducts trustee duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" Defendant NWTS is selling their services within Washington State, whether or not the Plaintiff agrees upon utilizing their company as trustee.

3.6.3.3 Element 3: That Impacts the Public Interest: Defendant NWTS's actions effect thousands of Washington homeowners and potential real estate buyers and investors. Their unethical conduct continues to cause the lowering of home values throughout the area by forcing depressed sales in the real estate market. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold.

3.6.3.4 Plaintiff and Defendant occupy significantly unequal bargaining positions due to the structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

3.6.3.5 Which causes injury to the Plaintiff: Defendant NWTS has caused significant damage to Plaintiff as their actions have severely clouded Plaintiff's title to his real property when it filed documents with

Bryan D. Mize
20908 48th Avenue W, Lynnwood, WA 98036
Phone: (206) 349-0733

false parties, claims and amounts owed for recording in Snohomish County. Further if NWTS concludes its trustee sale then Plaintiff will lose his legitimate rights to the real property in question. All of the claims against NWTS set within this Complaint are directly tied to the unethical and deceptive business practices referred to in this section.

**3.6.3.6** <u>Injury is casually linked to the deceptive act</u>: The injuries specified in 3.6.4.5 above are a direct result to NWTS's actions.

       **3.6.4**       **Plaintiff alleges that Defendant Chase has Violated the WA CPA**

**3.6.4.1** <u>Element 1: An unfair or deceptive act</u>: Plaintiff alleges Defendant Chase violated RCW 19.86 et seq. by participating in and causing NWTS to initiate a non-judicial foreclosure sale when Chase knew it did not have ownership of the promissory note yet claimed to have that ownership. Further Chase committed unfair or deceptive acts by filing or causing to be filed false statements with the Snohomish County recording office as described in detail above.

**3.6.4.2** <u>Element 2: In Trade or Commerce</u>: Plaintiff's loan transaction, like that of any homeowner that Chase professes to be conducting servicing duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" Chase is allegedly performing these servicing duties for another party, which one would reasonably expect Chase is expecting compensation in the form of a fee, therefore it is selling its services. Although Chase has insofar failed to produce the servicing agreement to show whom these services are performed on behalf of and what that fee is (as previously requested by Plaintiff).

**3.6.4.3** <u>Element 3: That Impacts the Public Interest</u>: Defendant Chase's actions of making false claims to have ownership of notes that were originally loaned upon by Washington Mutual Bank FA affects thousands of citizens in the state of Washington. Their unethical conduct continues to cause the lowering of home values throughout the area by forcing depressed sales in the real estate market. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold.

**3.6.4.4** Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted __without review__ or confrontation by a court…"* and recently in the January 26th Order [Dkt#32] in Thepvongsa v. Regional Trustee Services Corp et al._*"If the borrower objects, the __burden__ is on him to seek __judicial__ protection from wrongful foreclosure."*

**3.6.4.5** Which causes injury to the Plaintiff: Defendant Chase has caused injury to Plaintiff by filing documents containing false statements with the Snohomish County recording office which further clouds Plaintiff's title and reporting on Plaintiff's credit of a foreclosure, which is being executed unlawfully and incorrectly. Further Chase has damaged Plaintiff's credit by making false claims of being a creditor to Plaintiff and refusing to mark the account in dispute as required by the FCRA, FDCPA and RESPA as detailed above. Chase causes punitive injury to Plaintiff by forcing Plaintiff to continue with this litigation rather than admit their lack of standing and cease the unlawful foreclosure activities without the intervention of the Court.

**3.6.4.6** Injury is casually linked to the deceptive act: Defendants actions are directly related to the injury as described above.

    **3.6.5**    **PLAINTIFF CLAIMS DAMAGES** against Defendants NWTS and Chase for violations of the WA CPA and alleges all preceding allegations in sections 3.1-3.6 above are also violations of the CPA and therefore claims treble damages as allowed by the WA CPA on all counts and claims above as well as any attorneys fees and expenses Plaintiff incurred in bringing these claims against the Defendants. The exact amount of damages will be determined at trial or in a dispositive motion.

**3.7**    **Declaratory Relief; Lack of Standing**

    **3.7.1**    Plaintiff Bryan D. Mize repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

    **3.7.2**    Plaintiff alleges Defendant Chase has no standing to initiate a non-judicial foreclosure. First and foremost Defendant Chase does not own the promissory note which

appears to prove Plaintiff's allegations that the Notice of Default and Appointment of Successor Trustee were falsely and unlawfully executed. Further Defendant Chase has never had any beneficial interest in the Note and thereby cannot be considered the holder or person entitled to enforce the Note.

**3.7.3**     Defendant NWTS Services lacks standing to participate or initiate a non-judicial foreclosure against Plaintiff's real property as the Appointment of Successor Trustee was not executed by the beneficiary as required by RCW 61.24.010. **WHEREFORE** Plaintiff moves the Court to void all documents created, executed or filed by Defendant NWTS.

**3.7.4**     There are significant gaps in the chain of ownership of the beneficial interests in the Deed of Trust and Promissory Note. The original named lender, WAMU, never recorded any assignments or transfers whatsoever, which was required to be done when WAMU sold the promissory note to Freddie Mac. As no nominal beneficiary was defined in the original Deed of Trust, the Deed of Trust follows the Note as declared in Carpenter v. Longan. Therefore the beneficiary status of the Deed of Trust would have automatically transferred first to Freddie Mac, then to whatever entity Freddie Mac sold the note to. Therefore Defendant Chase cannot be now, or have ever been, the beneficiary. Any other transference of the beneficial status of the Deed of Trust would be considered a nullity.

**3.7.5**     As described above it appears that Defendants Chase and NWTS are attempting to unlawfully collect a debt and enforce a Security Instrument to which they have no rightful authority to enforce, no lawful rights to collect upon and no valid beneficial interest in as described in detail above.  And furthermore, due to the service (guarantee) provided by Freddie Mac, it appears that even the true party with a legitimate "beneficial interest" would not have been damaged by a default of the borrower and therefore the Power of Sale originally granted to "Chicago Title Insurance Co." could not be invoked nor made operative. Even if it could neither Chase nor NWTS as described herein would be the appropriate parties to do so.

**3.7.6**     **WHEREFORE** Plaintiff moves the Court to issue an order of Declaratory Judgment deeming all actions described herein by Defendants Chase and NWTS be ordered void.

**3.8      Preliminary Injunction**

**3.8.1**      If the defendants Chase and NWTS or any other parties or persons who claim any right without having the Power of Sale as stated in the Deed of Trust (Exhibit A) are permitted to sell the property at a non-judicial foreclosure sale, the rights and interests of Plaintiff in the real property described above will be lost, even though Plaintiff filed this lawsuit.

**3.8.1.1** That will cause Plaintiff irreparable harm in the loss of the title and associated ownership rights to his real property. In addition, the extensive damage to Plaintiff's financial status and credit standing will further damage his ability to recover from the unlawful action of the Defendants. Thus the Plaintiff will lose greatly by such foreclosure sale.

**3.8.1.2** Plaintiff's harm is significantly greater than that of the Defendants who appear to have no real interest in Plaintiff's Note. Even if any of the defendants do have rightful authority and interest to collect and/or foreclose on Plaintiff's loan, which they do not currently have, any harm to the Defendants would be minimal at best with the insurance policies and credit risk fees implemented by Freddie Mac to protect against any defaults on loans.

**3.8.1.3** Furthermore a non-judicial foreclosure sale is very unlikely to produce a value that will pay off the loan so whoever (if anyone) may have a rightful interest in the note, and therefore may be entitled to foreclose, which if anyone, appears to be a currently unnamed party and not one of the current Defendants, will also suffer loss caused by the foreclosure sale conducted by any of the currently named Defendants.

**3.8.1.4** In any event, none of the Defendants are likely to be able to prove entitlement to foreclose given the evidence described throughout this complaint.

**3.8.1.5** Public policy is in favor of granting Plaintiff relief. This is supported by rulings by Washington Courts and legislature[6] which have stated the Washington Deed of Trust Act must be construed in favor of the borrower.

---

[6] "The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower interests and the lack of judicial oversight in conducting non-judicial foreclosure sales." Udall, __Wn.2d at__, 154 P.3d at 890. See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wb. App. 532, 536-537, 119 P.3d 884, 886 (2005) ("Because these statutes' remove many protections borrowers have under a mortgage, lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor").

Bryan D. Mize
20908 48th Avenue W, Lynnwood, WA  98036
Phone: (206) 349-0733

**3.8.1.6**   Plaintiff claims the right of permanent injunction against NWTS for any and all activities related to the Plaintiff's financial and security instruments, and real property in its capacity as Substitute Trustee granted by the Appointment recorded in Snohomish County Records #201004070247.

**3.8.1.6.1**   Plaintiff claims the right of preliminary injunction against Chase for any and all activities related to the Plaintiff's financial and security instruments and real property, in its capacity as Owner/Holder if it cannot prove that it purchased for value the promissory note on or before March 16, 2010.

**3.8.1.7** Plaintiff hereby moves the court to issue a temporary restraining order and preliminary injunction against Defendants NWTS and Chase to maintain status quo throughout the pendency of this case.

## IV.   Requests for Relief

**WHEREFORE, Plaintiff having stated his claims for relief, requests relief against Defendants as follows:**

**4.1**   For Judgment against Defendants on Plaintiff's claims for violations of the Washington State Deed of Trust Act:

**4.1.1**   For Judgment of damages jointly and separately against Defendants NWTS and Chase for the multiple violations of the Washington Deed of Trust Act as described in Section 3.1 of this Complaint.

**4.2**   For Judgment on Plaintiff's claims for violations of Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §2605 et seq. and §2607 et seq. against Defendants Chase and NWTS, jointly and severally, in amounts to be proven at trial or dispositive motions. For Judgment against Defendant Chase for violations of the Truth In Lending Act (TILA), 15 U.S.C. §1641 et seq, in amounts to be proven at trial or dispositive motions along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

**4.3**   For Judgment against Defendants Chase and NWTS on Plaintiff's claims of violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692; jointly and severally, for damages in an amount to be proven at trial or in a dispositive motion and a reasonable award for attorney fees, court costs and expenses incurred while bringing this action.

**4.4**     For Judgment against Defendant Chase on Plaintiff's claims of violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 et seq, with damages in amounts to be proven at trial or dispositive motions along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

**4.5**     For Judgment against Defendants Chase and NWTS on Plaintiff's claims for violations of the Washington Consumer Protection Act (CPA), RCW 19.86 et al., for damages in the amount to be determined at trial or dispositive motion and trebled, along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

**4.6**     For Declaratory Judgment on Plaintiff's Claims re: Lack of Standing to Foreclose. Plaintiff requests a Declaratory Judgment that none of the named Defendants in this action have standing to foreclose or collect upon Plaintiff's note and deed of trust described in this Complaint above.

**4.7**     For first Preliminary Injunction and then Permanent Injunction in a future Dispositive Motion in favor of Plaintiff against all Defendants as described in Section 3.11 in this Complaint.

**4.8**     For such additional relief as the Court deems to be just and fair under the circumstances.

Dated: July 20, 2011

/s/ Bryan D. Mize -
**Bryan D. Mize**
**Pro Se**

Plaintiff's Initial Complaint       -25-       Bryan D. Mize
20908 48th Avenue W, Lynnwood, WA 98036
Phone: (206) 349-0733