The Honorable Marsha J. Pechman

20908 48th Ave W
Lynnwood, WA 98036
Tel. # (206) 349-0733
Fax # (866) 646-4933
E-mail: SirMize@gmail.com

**UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| Bryan D. Mize,                                                    | Case No: C11-1245-MJP                                                                                    |
|-------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------|
| Plaintiff,                                                        |                                                                                                          |
| vs.                                                               | EX PARTE Motion for:                                                                                     |
| Northwest Trustee Services, Inc.; JPMorgan Chase Bank NA          | 1. Second Temporary Restraining Order; <br> 2. Preliminary Injunction                                    |
| Defendants.                                                       |                                                                                                          |

#### I.   Nature of Motions for Temporary Restraining Order, Preliminary Injunction, and Relief Requested.

Plaintiff Bryan D. Mize ("Plaintiff") hereby moves the Court to issue a temporary restraining order, and preliminary injunction, enjoining a pending unlawful non-judicial trustee sale, scheduled for August 19th, 2011. The Defendants, against whom the injunction is sought, with brief description of the acts to be enjoined, are:

**1.1    Northwest Trustee Services, Inc., Defendant**

**Complaint                            - Page 1-**

Defendant Northwest Trustee Services, Inc. (hereinafter "NWTS"), is the reputed Successor Trustee per the "Notice of Trustee Sale" pursuant to the Deed of Trust (hereinafter "DoT") dated January 5th, 2007, and recorded in the Snohomish County Records January 16th, 2007 under Recording No. 200701160657, that encumbers the real property owned by Plaintiff, further described in ¶ 1.2 of Plaintiff's Complaint. Plaintiff requests NWTS be enjoined from acting as successor Trustee in regards to the DoT described above.

**1.2**     **JPMorgan Chase Bank NA**

JPMorgan Chase Bank NA (hereinafter "Chase") claims to be the successor in interest of Washington Mutual Bank,  however, Washington Mutual Bank, FA, was named as original lender of Loan No. 30114330703-048.   Chase is currently servicing Loan No. 30114330703-048. Plaintiff requests that Defendant Chase be enjoined from ordering or requesting a non-judicial trustee sale as the reputed owner/holder/beneficiary of the DoT described above and in ¶ 2.3 below, together with the Note referenced therein and further described in ¶ 2.2 below, per the "Appointment of Successor Trustee" filed in Snohomish County Records Recording No. 201004070247, which is defective as described in ¶ 2.5 below; the "Notice of Trustee Sale" filed in Snohomish County Records Recording No. 201105040102. Due to the reasons further described in ¶ 2.6 below this NoT is ineffective and should be held as void.


**II.  Statement of Facts.**

**2.1**     **Plaintiff is the Legal Title Holder to the Real Property Referred in the DoT being Foreclosed.**

Plaintiff acquired fee title to the real property commonly known as 20908 8th Ave W, Lynnwood, WA  98036 pursuant to that certain Statutory Warranty Deed dated August 29th,

**Complaint**                              **- Page 2-**

2001 and recorded in the Snohomish County Records Record # 200109110176, a copy of which is attached to Plaintiff's Complaint marked **Exhibit P**, and incorporated herein by reference as if fully set forth here.  The legal description of the real property is:

> LOT 1, CITY OF LYNNWOOD SHORT PLAT RECORDED UNDER AUDITOR'S FILE NUMBER 200505065042, BEING A PORTION OF THE SOUTHEAST QUARTER OF SECTION 21, TOWNSHIP 27 NORTH, RANGE 4 EAST, W M

Tax Parcel Number(s) 27042100408100

**2.2**    **Original Loan to Plaintiff;  Lender Named as Payee on Promissory Notes.**

The original lender on Loan No. 3011430703-048. Plaintiff applied for and obtained a home loan for $320,000 from WAMU.  As a part of the closing of the loan, the Plaintiff was required by WAMU to sign a promissory note, hereafter referred to as Note, stating a principal debt of $320,000.00. The only name listed in the signature field of the Note is Plaintiff's name "Bryan D. Mize". The note was expressly payable to Washington Mutual Bank FA or its order.  A signed copy of the Note is attached to Plaintiff's Complaint, marked **Exhibit B** and incorporated herein by reference as if fully set forth here.  At the upper right hand corner of the first page of the Note is a Loan No. 3011430703-048.  The note had an adjustable interest rate fixed for the first five years at 6 %. This loan is one of the subjects of this lawsuit.

**2.3**    **Payment of The Note was Secured by The Related Deed of Trust**.

The payment of the Note was secured by a deed of trust encumbering the Plaintiff's real property described in 2.1 of this Motion.  The payment of the Note was secured by a first priority deed of trust dated January 5th, 2007, and recorded in the Snohomish County Records January 16th, 2007 under Recording No. 200701160657.  This Deed of Trust is one of the subjects of this lawsuit, and encumbers the title to Plaintiff's real property described in 1.2 above.  A copy of the recorded Deed of Trust is attached to Plaintiff's complaint, marked

**Complaint**                          **- Page 3-**

**Exhibit A**, and incorporated herein by reference as if fully set forth here. A number listed on the first page of that exhibit is 3011430703-048 which corresponds to the Loan Number on the Note. The Deed of Trust provided that the Lender was Washington Mutual Bank FA; the Borrower was Bryan D. Mize A Single Person; the designated trustee was Chicago Title Insurance Co.; and the "Lender" is listed as the designated beneficiary.   The Deed of Trust document is 15 pages.

**2.4**   **Dunning Letter Received from Defendant NWTS's related business entity-Routh Crabtree Olsen Dated March  16th, 2011.**

Plaintiff received what appeared to be a form Debt Collection Letter dated March 16th, 2011. This letter stated a list of possible alternatives to foreclosures. A copy of the letter is attached to Plaintiff's Complaint, marked **Exhibit F,** and incorporated herein by reference as if fully set forth here. There are 3 separate identifying numbers listed on the top of the page:

    a.   Loan Number: 3011430703

    b.   Our File Number: 7763.26470

    c.   Freddie Mac Loan Number: 417138164

 This is the first time Plaintiff  has become aware of another party claiming ownership.

**2.5**   **Recorded Appointment of Successor Trustee Dated February 4th, 2011**.

**2.5.1** On April 7th, 2010 an Appointment of Successor Trustee was recorded on behalf of Defendant Chase in Snohomish County Records Recording No. 2010040702247. The appointment was dated April 2nd, 2010 and reputedly appointed NWTS as a Successor Trustee. A copy of the Appointment of Successor Trustee is attached to Plaintiff's Complaint, marked **Exhibit E**, and incorporated herein by reference as if fully set forth here.

    a.   The 1st paragraph states the beneficiary as Washington Mutual Bank, FA

**Complaint**                              **- Page 4-**

b.   The 3rd paragraph describes the "present beneficiary" as "**JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") successor to Washington Mutual Home Loans, Inc. fka PNC Mortgage Corporation of America from the Federal Deposit insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. 1821(d**)." This statement was false, as explained below.

c.   This appointment was signed by a person named Margaret Dalton, Vice President of Chase on April 2nd, 2010.

d.   The signature was notarized by D. Pekusic, a notary in the State of Florida stating that Lisa Marie Muniz had appeared before her and under on oath stated that she was authorized to execute the instrument and acknowledged it as Vice President of "JPMorgan Chase Bank National Association".

**2.5.2** Defendant Chase in fact never obtained an ownership/holder interest in the Note or the beneficial interest in the DoT as research has shown that WAMU had already transferred the note in an unrecorded sale to Freddie Mac. Nor did Chase acquire the Note and beneficial interest in DoT by their purchase from the FDIC of "substantially all the assets" of WAMU that was in receivership. IF Chase had purchased anything related to this loan it could only have been servicing rights, NOT a beneficial interest.

**2.5.3**   Even if Chase's acquisition of servicing rights through the FDIC did validly assign an interest (which remains to be seen by review of the related pooling and servicing agreement), granting Defendant Chase the authority to appoint a successor trustee that appointment did not occur until after NWTS had already unlawfully performed trustee duties by causing a Notice of Default pursuant to RCW 61.24 to be issued three weeks before they were authorized to do so.  Plaintiff asserts this could only have happened by Chase's request.

**Complaint**                                   **- Page 5-**

Because Defendant Chase was not the owner of the Note and the real beneficiary of the DoT, it had no authority to sign the Appointment of Successor Trustee. Only the beneficiary of a deed of trust has authority to appoint a successor trustee.[1]

**2.6**     **Notice of Trustee Sale Recorded by Defendant NWTS Recording Date May 4th, 2011.**

**2.6.1**     On May 4th, 2011 Defendant NWTS recorded a Notice of Trustee Sale (hereinafter "NoT") under Snohomish County Records Recording No. 201105040102.  A copy of this Notice of Trustee Sale is attached to Plaintiff's complaint, marked **Exhibit C,** and incorporated herein by reference as if fully set forth here.

**2.6.2**     The NoT states a scheduled sale date of August 5th,  2011 at 10:00am at the north entrance to the Snohomish County Courthouse, 3000 Rockefeller Ave, Everett, WA.

**2.6.3**     Chase is not the beneficiary of DoT due to the facts described in ¶ 2.5 and its subparagraphs above.  Thus, the recital of that "fact" in the NoT is false.

**2.6.4**     This NoT p. 2,  describes various charges totaling $48,949.87 as the amounts in arrears including Delinquent payments from June 1st, 2009 to  May 5th,  2011, which include "Lender's Fees and Costs" in the amount of $3400.53. The "Lender's Fees and Costs" have not been described to Plaintiff at any time.  These are believed by Plaintiff to be in the nature of unearned service fees.   Therefore, the charge and the amount of the charges are disputed. Defendants who assert the right to the charges have the burden of proving they are earned.

**2.6.5**     The NoT states "The sum owing on the obligation secured by the Deed of Trust is: Principal $319,651.74. Due to various discrepancies in amounts previously stated and the

---

[1]  See RCW 61.24.010(2).

**Complaint**                                    **- Page 6-**

above referenced unearned service charges Plaintiff claims that amount is inaccurate and as such is disputed.

**2.7** **Research related to the Ownership and Beneficial Interest of Plaintiff's Note and Deed of Trust.**

**2.7.1** Due to the recent media attention on "Foreclosure Fraud" Plaintiff began researching foreclosure fraud and making inquiries to determine if this is a case of foreclosure fraud and/or predatory lending that has occurred to many other homeowners throughout the Country. The results of this research were appalling to say the least.

**2.7.2** Upon receiving the results of the above referenced search Plaintiff visited Freddie Mac's website and performed a search to verify that in fact Freddie Mac was the owner of this loan. The results of that search were:

"**Yes.  Our records show that Freddie Mac is the owner of your mortgage**." A copy of the result of this search is attached to Plaintiff's Complaint as **Exhibit M** and incorporated herein by reference as if fully set forth here. These results further support the statement above in ¶ 2.6 that the Appointment of Successor Trustee is ineffective due to Defendant Chase not being the Beneficiary[2] of the DoT.

**2.7.3** As it appears that Freddie Mac has been a party to Plaintiff Loan it is probable that Plaintiff's Note & DoT (and Loan. No. 3011430703-048) referenced above may have been "securitized" as have millions of mortgage loans (notes and deeds of trust) entered into

---

[2] See RCW 61.24.005(2) *"Beneficiary" means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.*

**Complaint** **- Page 7-**

over the past decade. Plaintiff has learned this means there may be many other parties that could possibly make a claim in reference to Plaintiff's loan[3].

**2.8**     **Plaintiff Made Attempt to Obtain Validation of the Accounting and Proof of the Identification and Rights of the Owner/Holder of the Note and/or Beneficiary of the Deed of Trust.**

**2.8.1** After identifying the above described issues with the accounting and ownership/beneficial interest of Plaintiff's Loan. Plaintiff made an attempt to obtain a validation of the accounting and proof of the identity of Owner/Holder of the Note and Beneficiary of the DoT from the Defendant Chase, and all other parties indentified in the documentation he had by sending a combined Qualified Written Request, Dispute of the Debt and Demand for Validation, and Request for Validation of Ownership. Plaintiff also notified various authorities and regulatory agencies of the violations that were found in an attempt to stop the unauthorized parties from completing the currently pending unlawful non-judicial trustee sale. This combined Qualified Written Request, Dispute of the Debt and Demand for Validation, and Request for Validation of Ownership was mailed via U.S. Mail, prepaid certified return receipt requested.  Plaintiff has signed receipts of the mailings.  Plaintiff also recorded a copy of the QWR, Dispute and Debt Validation Letter in the public records of Snohomish County Record # 201003050324, a copy of which is attached to Plaintiff's Complaint as **Exhibit K** and incorporated herein by reference as if fully set forth here, to provide constructive notice to any unknown parties that may have an interest in Plaintiff's Loan. As described above although no disclosure has been provided to Plaintiff regarding the

---

[3] See RCW 62A 3-309(b): *"…The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument…"*

**Complaint**                          **- Page 8-**

sale of the loan it appears that Plaintiff's Note & DoT may have been sold or transferred to many other parties.

**2.8.2** Plaintiff received acknowledgments of receipt from Defendant Chase. A Copy of the response is attached to Plaintiff Complaint as **Exhibit L** and incorporated herein by reference as if fully set forth here.

**2.8.3** This correspondence does not meet the requirements of properly validated debt in regards to a Fair Debt Collection Practices Act dispute or Validation request. According to many courts around the country validation of the debt must be a signed judgment order or an accounting that is signed and dated by the person responsible for maintaining the account general ledger[4]. This correspondence appears to be nothing more than an attempt to overshadow Plaintiff's rights to obtain proper validation of the debt. This correspondence appears to be just another attempt to collect a debt.

**2.9      Plaintiff Requests Strict Proof of Defendant's Claims of Right to Foreclose.**

**2.9.1** Plaintiff requests strict proof from any Defendant who claims the right to foreclose, which proof should meet the following requirements:

**2.9.2** The indorsements[5] of the signature original promissory note were made by the proper entities at the proper time and in the proper sequence to show the history of transfers

---

[4] See Spears v. Brennan, Pacific Concrete F.C.U. V.Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority 28 Conn. L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc. 513 A.2d 1218, 201 Conn.1(1986). See also Solon v. Godbole, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

[5]  This is the spelling used by the Washington State UCC, Negotiable Instruments Law, RCW 62A.3-101 et seq.

**Complaint**                                           **- Page 9-**

from the original lender/payee named on the note through to the current holder/owner of the note, all pursuant to applicable Washington State negotiable instruments law.

**2.9.3** That any assignments of the beneficial interest in the deed of trust were made to the same entities at the same time as any indorsements of the note secured by the deed of trust, so that the beneficial ownership of the deed of trust was not separated from the rightful ownership of the note.

**2.9.4** That the person who claims the right to foreclose the deed of trust is either the real party in interest who owns and holds both the note and the deed of trust for its own benefit, or is a representative of the real party in interest that has authority to act and is acting for the rightful owner(s) and holder of the note and the beneficial interest in the deed of trust, whomever that may be.

### III. Legal Authorities and Argument

**3.1**    **Defendant NWTS has violated RCW 61.24.et seq.**

**3.1.1**        Plaintiff claims that Defendant NWTS has violated RCW 61.24 et seq. by proceeding to issue and record in the Snohomish County Records the Notices of Trustee Sale without first being certain that a) NWTS, itself, had been validly appointed as a successor trustee in accordance with the applicable laws, and in a timely fashion; b) the reputed beneficiary named in the Notice of Trustee Sale has the right and authority to invoke the power of sale granted to the originally named Trustee of the DoT Chicago Title Insurance Co. and also has the authority as, beneficiary, of the DoT to instruct Defendant NWTS to begin a non-judicial trustee sale proceeding.

**3.1.2**        Defendant NWTS has been previously warned of its responsibilities to determine if a reputed beneficiary has the necessary documentation to prove the right to

**Complaint**                              **- Page 10-**

foreclose and has been warned that a failure to have obtained copies of the necessary documents is a failure to fulfill its responsibilities to any borrower against whom foreclosure is sought. This warning came from no less than the Washington State Attorney General's office.

**3.1.3**   Rob McKenna, the Washington State Attorney General, sent a letter in reference to "**Potential Unlawful Foreclosure Practices in Washington"** to many Trustees who perform foreclosure activities in Washington State including Defendant NWTS (hereinafter "AG Letter").  A copy of that letter is attached hereto, marked as Plaintiff's **Exhibit N** and incorporated herein by reference as if fully set forth here. Among the relevant warnings in the letter is the following:

> "… Trustees must be sure that the lender has the authority to foreclose and that the documents which create the chain of ownership are accurate."

**3.1.4**   Plaintiff claims that NWTS failed to fulfill the good faith duties as a successor trustee as described above, and required by RCW 61.24.010 et seq.

**3.2**   Plaintiff also claims that Defendant NWTS has violated RCW 61.24 *et seq.* by not complying with all of the prerequisites of RCW 61.24.030 including but not limited to subsection (7)(a) prior to issuing a Notice of Trustee Sale.  That subsection states:

> "…before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note."

As described above, Plaintiff has requested this ownership information from Defendant NWTS and has yet to receive any such proof.

**3.2.1**   Plaintiff also claims that Defendant NWTS has violated its statutory duty as stated in the AG letter when it filed the Notice of Trustee sale prior to performing that duty. The AG letter reads in that relevant part as follows:

**Complaint**                                  **- Page 11-**

"As a trustee responsible for conducting non-judicial foreclosures, **you have a statutory duty to perform all foreclosures in good faith and you owe that duty to both the homeowner** and the lender. **Your duty includes assuring that every procedural step, every legal notice,** and all mandated mediation opportunities **are provided to homeowners facing foreclosure in fullest conformance with the law.**"

[bolding and emphasis supplied by Plaintiff]

**3.2.2**   Until a complete chain of title ownership of the original signatory note coupled with a proper simultaneous assignment of the Deed of Trust that secures the payment of the Note can be proven it is not possible to determine which if any of the named Defendant(s) have the rights and authority to collect on the loan or foreclose on Plaintiff's real property.

**3.3   Defendants Who Acted to Prepare for and Support Foreclosure were Complicit in the Violation of RCW 61.24, et. seq**

Plaintiff claims that Defendant Chase violated RCW 61.24 *et seq.* by acting to prepare for, supporting and causing Defendant NWTS to initiate non-judicial foreclosure proceedings against the real property described above, when they knew or should have known that the proper procedures had not been followed to:

(A) provide Defendant NWTS with accurate information concerning the status of ownership of the signed original Note and related beneficial interest in DoT necessary to provide Defendant NWTS with the authority to issue a Notice of Trustee Sale and perform other actions of a Successor Trustee in relation to Plaintiff's DoT;

(B) provide Defendant NWTS with adequate information, documentation, and accounting records to satisfy the requirements of a Debt Collector under the Fair Debt Collection Practices Act.

**3.3.1**   As further described above in ¶ 2.5 the Appointment of Successor Trustee was not even in effect at the time that NWTS acted in a trustee capacity on behalf of Chase by

**Complaint**                                        **- Page 12-**

executing a Notice of Default.  Therefore, all statutory timelines required by RCW 61.24 have been a falsehood as they all begin with a properly and lawfully executed Notice of Default.

**3.4  Defendant(s) NWTS, Chase Separately and Together have Violated the Washington Consumer Protection Act (CPA) RCW 19.86 et. seq. by using Unfair and Deceptive Acts in an attempt to acquire Plaintiff's Real property.**

**3.4.1  Plaintiff claims Violations of Washington Consumer Protection Act (CPA) RCW 19.86 et. seq. against Defendant NWTS.**

Defendant NWTS committed violations of WA CPA when it attempted to conduct a non-judicial trustee sale without verifying that the Debt it was attempting to collect was valid and/or enforceable or verifying the party it was attempting to collect for had the rights and authority to collect and/or enforce the debt. The elements of a CPA claim are (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act.

**3.4.2**  Plaintiff alleges Defendant NWTS conducted (1) unfair or deceptive acts and practices when it continued to conduct actions of a non-judicial trustee sale in violation of its statutory duties, as further defined above without validating that it was being instructed to do so by the true owner of the signature original promissory note and the true beneficiary of the DoT related to Loan. No. 3011430703-048.

**3.4.3**  Plaintiff's entire loan transaction, like that of any of homeowner is a part of trade or commerce.  When Defendant NWTS sends notices and schedules non-judicial trustee sale actions against a homeowner, that action, also meets the requirement of an action in Trade or Commerce as defined in

**Complaint**                                    **- Page 13-**

RCW 19.86.010 which reads: *"shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."* Defendant NWTS is selling their services within Washington State to parties who are attempting to collect debts and foreclose on the real property rights of the Plaintiff and other similarly situated Washington residents.

**3.4.4**   Defendant NWTS's business activities unavoidably affects the public interest every time NWTS violates the Washington Deed of Trust Act, such as the violations that have occurred with regard to Plaintiffs property in this case.  NWTS is very active in the business of foreclosures. It advertises for, solicits, and actively seeks foreclosures as part of its regular business activity. See its website http://www.northwesttrustee.com/. The website includes the statement quoted below:

"We have conducted (or monitored) more than 250,000 non-judicial foreclosures in Alaska, Arizona, California, Idaho, Montana, Nevada, Oregon and Washington. Our sister law firm, Routh Crabtree Olsen, P.S. conducts judicial foreclosures in our coverage area and RCO Hawaii, L.L.L.C conducts foreclosures in Hawaii."

**3.4.5**   The continuation of Defendant NWTS's actions of setting a foreclosure sale of Plaintiff's property when it knew or should have known that its client/customer, Chase, had not produced a properly indorsed original note with a simultaneous assignment of the beneficiary's interest in the Deed of Trust that secures payment of the Note, that omission, is clearly a violation of the good faith responsibilities of a successor trustee to ensure that its client has the right to foreclose the Deed of Trust prior to proceeding with a non-judicial

**Complaint**                                      **- Page 14-**

foreclosure. That would be especially true given the publicity and number of litigated case opinions issued during the last two and a half years (since 2008) that have addressed the problem of the frequent failure of alleged mortgage lenders and servicers who claim ownership/beneficial interest to produce the properly indorsed original note and the related robo-signing scandals involving the cover-up of those same mortgage lenders and servicers wrongdoings and lack of proper documentation.

**3.5** **None of the Defendant(s) have Standing to Foreclosure or Collect upon Plaintiff's Loan described above.**

Based on the facts, claims, and allegations presented throughout Plaintiff's Complaint and particularly in the paragraphs in Part II of Plaintiff's Complaint. Plaintiff claims the right to a Declaratory Judgment that none of the Defendant(s) in this case has the standing to foreclose against Plaintiff property because none is a real party in interest who holds the properly indorsed original note signed by Plaintiff simultaneous with the assignment of the beneficiary's interest in the Deed of Trust that secures payment of the original Note. Furthermore, Defendant Chase who is acting as a Debt Collector has failed to properly validate the debt upon receipt of Plaintiff's written Dispute and Validation.

**3.6** **There are Significant Discrepancies in the "Chain of Title" to The Note and Beneficial Interest in the Deed of Trust.**

> **3.6.1** As a part of the request for a Declaratory Judgment Plaintiff claims that there are significant discrepancies in the chain of ownership of the Promissory Note, assuming it is no longer owned by Washington Mutual Bank FA, the original named payee. Plaintiff claims that no Defendant named in this case holds the properly indorsed original note signed by Plaintiff. In addition,

**Complaint** **- Page 15-**

as described above it appears that there may be other parties who may attempt to claim an interest in Plaintiff's Note and/or Deed of Trust. Until any Defendants attempting to make a claim, prove that such a claim by another party does not exist, no Defendant can claim the right to foreclose in reliance of the DoT. See RCW 62A 3-309(b):

> *"…The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument…"*

Even if such Defendant were able to demonstrate an enforceable assignment of the DoT without the simultaneous delivery to it of the properly indorsed original note signed by Plaintiff, that assignment would be a nullity as described below.

**3.6.2**    The original Lender on the Note was Washington Mutual Bank FA, who never made any assignment of its interests in the NOTE to Defendant Chase or any other party.

**3.6.2.1** WAMU, is no longer in business.

**3.6.2.1.1**    Plaintiff asserts that WAMU cannot now or at any time in the future be instructed to assign its interest in Plaintiff's DoT, because WAMU, is no longer in existence.

**3.6.2.1.2**    The lack of any of the above described assignments of the Deed of Trust or indorsements and transfers of the Note leaves a gap in title to both the note and the beneficial interest in the deed of trust.

**3.6.2.2** The Party, if any exists; who holds the properly indorsed original note signed by Plaintiff together with an enforceable assignment of the DoT is currently unknown to Plaintiff, due to the reasons described above and in Plaintiff's Complaint.

**Complaint**                                        **- Page 16-**

**3.7** **Plaintiff Requests Relief By Way of Declaratory Judgment Voiding the Actions of Defendant(S) NWTS and Chase In Reference to the Above Described Documents and the Currently Pending Non-Judicial Trustee Sale.**

As described above it appears that all of the Defendant parties are attempting to unlawfully collect a debt and enforce a security instrument to which they have no rightful authority to enforce, no lawful rights to collect upon, no valid beneficial interest in. Plaintiff claims the right to Declaratory Judgment that all actions of Defendant(s) NWTS and Chase, in an effort to foreclose on Plaintiff's loan should be adjudged void and of no legal effect.

**3.8** **Plaintiff's claims for Temporary Restraining Order and Preliminary Injunction.**

**3.8.1** **Plaintiff Requests Temporary Restraining Order and Preliminary Injunction.**

This court ruled in the initial motion that there was strong enough case to warrant a temporary restraining order, but delayed ruling on an Injunction because there was no hearing as defendant Chase had not appeared yet. Defendant Chase has now appeared and Plaintiff has complied with all court orders required. Preliminary injunctions are appropriate where there is (1) a strong likelihood of success on the merits; (2) a possibility of irreparable injury not remediable by damages; (3) a balance of hardships in the Movant's favor; and (4) a public policy in favor of granting the relief. *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 280, 860 P.2d 1328, 1333 (Ct App. 1993). This is further supported by one of the most cited federal appellate cases concerning the legal standard for issuance of preliminary injunctive relief is *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir. 1977)*,* which concerned that plaintiff's appeal of the refusal of the Federal District Court to issue a preliminary injunction under FRCP 65(a). The plaintiff was an authorized dealer of the defendant manufacturer. The plaintiff's dealership was

**Complaint** **- Page 17-**

terminated by defendant in a manner that plaintiff claimed violated section 1 of the Sherman

Act, and requested a preliminary injunction among other relief. The Court of Appeals reversed

and remanded with instructions to issue a preliminary injunction. Id. 198.   The Court of

Appeals, stated the fourfold equitable rules of thumb for the determination of whether

preliminary injunctive relief should be granted under FRCP 65(a) as:

    1)  Has the petitioner made a strong showing that it is likely to prevail upon the merits?

    2)   Has the petitioner shown that without such relief it will suffer irreparable injury?

    3)  Would the issuance of the injunction substantially harm other interested parties?

    4)  Wherein lies the public interest?

The Court then discussed at length how the factors were to be weighed and evaluated by a trial

court.  Id 192-197.  In essence, the Court ruled:

> It is sufficient (to grant the motion) if the court is satisfied that there is a
> probable right and a probable danger, and that the right may be defeated, unless
> the injunction is issued, and considerable weight is given to the need for
> protection to the plaintiff as contrasted with probable injury to the defendant.

The Appellate Court in *Blackwelder,* 550, F.2d 194, 195 states:

> The balance-of-hardship test correctly emphasizes that, where serious issues are
> before the court, it is a sound idea to maintain the status quo ante litem,
> provided that it can be done without imposing too excessive an interim burden
> upon the defendant, Munoz v. Porto Rico Light & Power Co., 83 F.2d 262, 269
> (1st Cir. 1936); Benson Hotel Corp. v. Woods, 168 F.2d 694, 696 (8th Cir,
> 1948); Pratt v. Stout, 85 F.2d 172, 177 (8th Cir. 1936); Sinclair Refining Co., v.
> Midland Oil Co., supra, 55 F.2d at 45 (citing Blount v. Societe Anonyme Du
> Filtre, 53 F. 98, 101 (6th Cir. 1892)), for otherwise effective relief may become
> impossible:

> The controlling reason for the existence of the judicial power to issue a
> temporary injunction is that the court may thereby prevent such a change in the
> relations and conditions of persons and property as may result in irremediable
> injury to some of the parties before their claims can be investigated and
> adjudicated.

**Complaint**                                  **- Page 18-**

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 743 n. 10 (2d Cir. 1953) (quoting Love v. Atchison, T. & S. F. Ry. Co., supra, 185 F. at 332).

> The district court below erred in holding that plaintiff must first show "likelihood of success" in order to be entitled to preliminary relief. Instead, the first step in a Rule 65(a) situation is for the court to balance the "likelihood" of irreparable harm to the plaintiffs against the "likelihood" of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation:

> (I)t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.

Hamilton Watch Co. v. Benrus Watch Co., supra, 206 F.2d at 740, 743; Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970).

> The importance of probability of success increases as the probability of irreparable injury diminishes, Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 923 (3rd Cir. 1974); Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974); District 50, United Mine Workers v. United mine Workers, 134 U.S.App.D.C. 34, 412 F.2d 165, 168 (1969); Packard Instrument Co. v. ANS, Inc., 416 F.2d 943 (2d Cir. 1969); and where the latter may be characterized as simply "possible," the former can be decisive. Even so, it remains merely one "strong factor" to be weighed alongside both the likely harm to the defendant and the public interest. Dino De Laurentiis Cinematografica, SpA. V. D-150, Inc., 366 F.2d 373,375 (2d Cir. 1966) (quoting 3 Barron & Holtzoff, Federal Practice & Procedure, ¶ 1433 at 493 (1958)).

> Among cases in accord see: *Abbott Laboratories v, Sandoz, Inc.,* 544 F.3d 1341, 1361, 1362, (Fed. Cir. 2008); *A&M Records v. Napster*, 239 F.3d 1004, 1013 (9th Cir. 2001); *L.J. By and Darr v. Massinga*, 838 F.2d 118, 120-122, (4th Cir.1988); *Smith International, Inc., v. Hughes Tool Company*, 718 F.2d 1573, 1577-1581, (Fed. Cir. 1983)

In *A&M Records v. Napster, supra,* at 239.F3d 1013, the Court stated:

> Preliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in its favor.  Prudential Real Estate Affiliates, Inc. v. PRR Reality, Inc. 204 F.3d 867,874 (8th /Cir. 2000). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."

**Complaint**                                   **- Page 19-**

**3.8.2**   If the Defendant(s) NWTS, Chase, or any other parties or other persons, are permitted to sell the property at a non-judicial foreclosure sale, the rights of and interests of Plaintiff in the real property described above will be lost, even though Plaintiff has filed the Complaint.

**3.8.3**   That will cause Plaintiff irreparable harm in the loss of the title and associated ownership rights to the real property described above in ¶ 2.1. In addition, the extensive damage to Plaintiff's financial status and credit standing will further damage his ability to recover from the unlawful action of the Defendants. Thus the Plaintiff will lose greatly by such foreclosure sale.

**3.8.4**   Plaintiff's harm is significantly greater than that of the Defendants who appear to have no interest in Plaintiff's loan. Even if any of the Defendants do have rightful authority and interest to collect and/or foreclosure on Plaintiff's loan, the beneficial impact to the Defendants' would be minimal at best as Defendant Chase is a national banking institution, which according to the national information center ranks second in the nation in total assets. Thus this Bank will lose a "deminimus" of its value if it never were to foreclose on the Plaintiff's Loan.

**3.8.5**   Furthermore a non-judicial foreclosure sale is very unlikely to produce a reasonable value that will pay off the loan so whoever (if anyone) may have a rightful interest in the note, and therefore may be entitled to foreclose which appears to be a currently unnamed party and not one of the current Defendants, will also suffer losses caused by the foreclosure sale conducted by any of the currently named Defendants

**Complaint**                                    **- Page 20-**

**3.8.6**   In any event, based upon the strong likelihood of Plaintiff's success based upon the merits of this Complaint none of the Defendants are likely to be able to prove entitlement to foreclose given the evidence described through-out the Complaint.

**3.8.7**   Public policy is in favor of granting Plaintiff relief this is supported by the rulings of Washington State Courts and even the Washington State legislature[6] which has stated The Washington State Deed of Trust Act must be construed in favor of the borrower.

## IV.   <u>Conclusion</u>

The Defendant(s) have engaged in unfair and deceptive business practices resulting in unlawful and inequitable conduct concerning the foreclosure of the DoT described above in ¶ 2.3. Both a Temporary Restraining Order and Preliminary Injunction are critical to maintaining the status quo and preventing an unlawful non-judicial trustee's sale that will irreparably harm Plaintiff.

Furthermore, a Preliminary Injunction is appropriate based upon the evidence described above in ¶ 3.6 until discovery and an evidentiary hearing can be performed to determine who, if anyone, the true owner and holder of the original signatory note and beneficiary of the above described deed of trust is, all pursuant to Plaintiff's request in ¶ 2.9 above.

These actions by the court will provide relief to Plaintiff from the unlawful, unfair and deceptive actions committed separately and together by the Defendants in an apparent attempt

---

[6] "The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower' interests and the lack of judicial oversight in conducting non-judicial foreclosure sales." Udall, __Wn.2d at__, 154 P.3d at 890. See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wn. App. 532, 536-37, 119 P.3d 884, 886 (2005) ("Because these statutes' remove many protections borrowers have under a mortgage, lenders must strictly comply with the statutes, and courts must strictly construe the statues in the borrower's favor").

**Complaint**                                    **- Page 21-**

to illegally acquire Plaintiff's real property via a non-judicial trustee sale which has no judicial oversight. See Udall, __Wn.2d at__, 154 P.3d at 890:

> *"The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower' interests and the lack of judicial oversight in conducting non-judicial foreclosure sales."*

**Wherefore,**

Plaintiff moves the court to immediately issue an order

**4.1** Temporarily restraining defendants from completing the currently pending non-judicial trustee sale currently scheduled for Friday August 19th, 2011.

**4.2** For Preliminary Injunction to maintain status quo until this complaint can be properly adjudicated.

**4.3** For such additional relief as this Court deems to be just and fair under the circumstances.

Dated: August 17th, 2011

**_s/ Bryan D. Mize_**
Bryan D. Mize
20908 48th  Ave W
Lynnwood, WA  98036
Tel. # (206) 349-0733
Fax # (866) 646-4933
E-mail:  SirMize@gmail.com

**Complaint**                              **- Page 22-**